People v Brown (2024 NY Slip Op 24061)

[*1]

People v Brown

2024 NY Slip Op 24061

Decided on February 28, 2024

Supreme Court, New York County

Newbauer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on February 28, 2024
Supreme Court, New York County

The People of the State of New York,

against
Albert Brown, Defendant.

Ind. No. 75470-23 

Katherine DeMartini, Assistant District Attorney, New York County District Attorney's Office
Shari Vrod, New York County Defender Services, for Albert Brown

April A. Newbauer, J.

The People have moved to take a buccal swab for DNA analysis and a blood sample for HIV testing from defendant Albert Brown. Brown is charged with predatory sexual assault (PL § 130.95(1)(b)) and related charges. The People's affirmation states that on November 1, 2023, the victim was approached by a man wearing a ski mask who ordered her to hand over her belongings while making a gesture to indicate he was in possession of a gun. The man then withdrew a firearm, pointed it at the victim, and demanded oral sex.
The victim was eventually brought to Harlem Hospital where a sexual assault evidence kit was performed and swabs were taken, including of her face and hair. The Office of the Chief Medical Examiner (OCME) tested the swabs and male DNA was detected. OCME developed a 22-locus DNA profile from a male (Male Donor A) and determined that the profile was suitable for comparison. A search of the State DNA Index System (SDIS) resulted in an association between the sample and the defendant, and the defendant was arrested for the incident. On November 13, 2023, the OCME received notification from the Division of Criminal Justice Services (DCJS) that a new sample should be collected from the defendant for confirmatory analysis. The People assert that, per DCJS's recommendation, obtaining a second DNA sample from the defendant through the taking of a buccal swab will lead to relevant and material evidence. The defense opposes the buccal swab order and seeks a protective order limiting the use of the defendant's DNA from the buccal swab to the instant case.
The facts in the People's motion, together with the grand jury's vote to indict the defendant, supply probable cause to believe that Brown has committed the crimes charged. See Matter of Abe A., 56 NY2d 288, 291 (1982); Matter of Marino v. Kahn, 49 AD3d 741 (2nd Dept 2008). The method to obtain Brown's saliva and buccal cell samples by swabbing inside his cheek is safe, reliable, and minimally intrusive. See Maryland v. King, 569 US 435 (2013); Matter of Abe A., 56 NY2d at 291.
The defense argues that ordering a new DNA sample from the defendant is unnecessary and duplicative given the that the defendant's DNA profile is already contained within the state database. The defense maintains that the People have failed to establish that the additional bodily intrusion will yield non-cumulative evidence, unless they have a good-faith belief that the analyses performed with the defendant's existing sample were flawed. The People have not expressed such a belief. While a DNA profile should never "go bad", it is likely that due to varying protocols and personnel change, the prosecution may have practical difficulties introducing the state database evidence at trial. There can be a real difference in comparing evidence of a profile developed from a convicted offender in the past, and a fresh profile developed under current OCME standards. A new sample would be handled using current protocols; in addition, the District Attorney's office can follow the process and know the handling and testing of the sample are done in accordance with current OCME standards and call an OCME witness(es) in accordance with People v. John, 27 NY3d 294 (2016).
Courts should treat applications for DNA samples with the care that the Fourth Amendment demands. Matter of Abe A., 56 NY2d 288, 291. Probable cause having been met, the issue is the cumulative nature of the evidence. There is only a slight chance that a new sample will yield a different result; therefore, the argument that taking an additional sample will facilitate the resolution of the case is a weak one. The People have not yet filed a Certificate of Compliance or Certificate of Readiness for this case. Since the case is not set for trial, the court finds there is no compelling need to order the Fourth Amendment intrusion at this time. If the People file certificates, they may then submit an order and take the sample. The People's motion for a buccal swab is granted to the extent that a sample may be taken if the certificates have been served and filed, and the case is set for trial.[FN1]

The People also move to compel the defendant to submit to the taking of a blood sample for the purpose of testing the sample for HIV. In support of their motion, the People cite C.P.L. § 210.16, which states that:
In a case where an indictment or a superior court information has been filed with a superior court which charges the defendant with a felony offense enumerated in any section of article one hundred thirty of the penal law where an act of "sexual intercourse," "oral sexual conduct" or "anal sexual conduct," as those terms are defined in section 130.00 of the penal law, is required as an essential element for the commission thereof, the court shall, upon a request of the victim within six months of the date of the crimes charged, order that the defendant submit to human immunodeficiency virus (HIV) related testing. Testing of a defendant shall be ordered when the result would provide medical benefit to the victim or a psychological benefit to the victim.
NY Crim Pro. Law §210.16 (LexisNexis). Furthermore, the People attach a signed letter from the victim, in which she insists that testing the defendant for HIV would have "tremendous psychological and medical benefit to me."
The defense counters that the People failed to meet the requirements of §210.16 by filing their request for testing more than forty-eight hours after the indictment against the defendant was filed. The defense also disputes that the victim would obtain any medical or psychological benefit as a result of the defendant being tested for HIV. With regard to the first issue, the defense is correct that §210.16 states that a request for HIV testing must be made within forty-eight hours after an indictment has been filed, although an exception exists for "good cause shown." The People filed the indictment on November 17, 2023, and did not submit the victim's signed and notarized request for testing until November 28, 2023. However, as the People note, the day they filed the indictment was the Friday before the Thanksgiving holiday and they required additional time to coordinate the schedules of the victim and the assigned ADA. The People still acted relatively promptly to submit the request, and the court finds there was good cause to justify the slight delay. With regard to the second issue, the court finds that obtaining additional information regarding the defendant's HIV status could still provide a benefit to the victim. While the court notes the defense's argument that the victim is most likely no longer taking HIV prophylaxis medications since the typical treatment course is just 28 days, the court believes there could still be a psychological benefit to the victim in obtaining additional information about the defendant's HIV status.
The court is unconvinced by defense's additional argument that there is no chance the victim could have contracted HIV from the defendant because a buccal swab of the victim's mouth did not reveal male DNA. The statute is clear that if the victim of a felony offense that includes an act of sexual intercourse, anal sexual conduct, or oral sexual conduct requests that a defendant submit to HIV testing, the defendant must do so, regardless of the presence or lack thereof of the defendant's DNA in various places.
The People's motion to take blood samples from the defendant is granted. The People have not requested a force order, and the court believes that issuing one at this time would be premature. This is the decision and order of the court.
E N T E R
New York, New York
February 28, 2024
April A. Newbauer
Acting Supreme Court Justice

Footnotes

Footnote 1: At that time, a protective order will also be signed. See People v. Blank, 61 Misc 3d 542 (Sup Ct, Bronx County 2018); People v. K.M., 54 Misc 3d 825 (Sup Ct, Bronx County 2016).